**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WHAM-O HOLDING, LTD. and
INTERSPORT CORP. d/b/a WHAM-O,

        Plaintiffs,

      v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

        Defendants.

Case No.:  1:22-cv-06802

Judge Franklin U. Valderrama

Magistrate Judge Sunil R. Harjani

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
<u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

Plaintiffs, Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O, ("WHAM-O" or

"Plaintiffs"), submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary

Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery,

and service of process by email and/or electronic publication (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II. STATEMENT OF FACTS..........................................................................................4

    A. WHAM-O TRADEMARKS AND PRODUCTS.................................................................4

    B. DEFENDANTS' UNLAWFUL ACTIVITIES ....................................................................4

        i. *Defendants Operate Legitimate-Looking Internet Stores* .................................5

        ii. *Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines*...6

        iii. *Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down* ..............6

III. ARGUMENT.......................................................................................................8

    A. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ..........................10

    B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ............11

    C. WHAM-O WILL LIKELY SUCCEED ON THE MERITS.................................................12

        i. *Wham-O Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim* ................................................12

        ii. *Wham-O is Likely to Succeed on its False Designation of Origin Claim*......................16

    D. THERE IS NO ADEQUATE REMEDY AT LAW AND WHAM-O WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF ........................................16

    E. THE BALANCING OF HARMS TIPS IN WHAM-O'S FAVOR .........................................18

    F. ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST.......................................19

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE..............................................20

    A. A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF WHAM-O'S MARKS IS APPROPRIATE ..................20

    B. PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE .............................21

    C. WHAM-O IS ENTITLED TO EXPEDITED DISCOVERY.................................................23

    D. SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION IS WARRANTED IN THIS CASE..........................................24

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF..............................................29

VI. CONCLUSION ....................................................................................................29

# TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992) ................................................. 13

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, \*10 (C.D. Ill. Apr. 18, 2013) ............................................................................................................................ 18

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ................... 26, 28

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ............................................ 22

*CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001) ............................................... 16

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, \*1 (N.D. Ill. May 15, 2001) .................................................................................................................. 13

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) .......................... 10

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ................................................................ 28

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) ............................................................. 27

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996) ............................................ 16

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461, 462, 469 (7th Cir. 2000)... 14, 16, 20, 23

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989)............ 16

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ...................................................................................................................................... 21

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ..................................................................... 30

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ............................ 27

*Hangzhou Chic Intelligent Technology Co.; and Unicorn Global, Inc., v. The Partnerships and Unincorporated Associations Identified on Schedule A,* 20-cv-04806 (N.D. Ill. April 1, 2021) ... 35

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). 20

*In re LDK Solar Secs. Litig.,* 2008 WL 2415186,\*2 (N.D. Cal. Jun. 12, 2008) ................................. 36

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009)............................................ 36

*In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979)................................................................. 3

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).......... 21

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) .................... 23

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)........... 19

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C.
  Jan. 30, 2008)......................................................................................................... 33

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ........................... 22

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) .................. 26, 28

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995) ............................................. 17

*Lorillard Tobacco Co. v. Montrose Wholesale Candies*..................................................................... 27

*Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005)........................................................... 27

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2
  (N.D. Ill. Dec. 1, 2008) ................................................................................................ 33

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C.
  1996). ..................................................................................................................... 23

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997) ............. 20

*Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018) ..................................... 34

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26,
  2007) ...................................................................................................................... 36

*NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022)
  ...................................................................................................................... 11, 12

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).................... 14, 19

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)................................. 29

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961)............................. 15

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ............................................. 15

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004)........ 33

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002).............................. 21

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).................... 11

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) ..................................................... 20

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ......................... 27, 28

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) .......................... 32, 33, 34

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ......................... 18

*Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ...................................................................................................................... 24

*Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950)..................................................... 23

*Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016) .................................................................... 35

*Toho Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* No. 22-cv-00011 (N.D. Ill. Jan. 4, 2022) ................................................................... 3, 26, 29, 33

*Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) ............................................................ 12

*Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996)...................... 15

*Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)................. 17

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)................................................. 13

*Ty, Inc.*, 237 F.3d at 895 ................................................................................................................... 22

*uBID, Inc. v. GoDaddy Group, Inc.*  623 F.3d 421, 423 (7th Cir. 2010)............................................. 11

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007)................ 29

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-

    YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ....................................................... 20

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983)

    ............................................................................................................................................................. 20

*Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and*

    *Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-04980 (N.D. Ill. Sept. 21,

    2022) ........................................................................................................................... 3, 25, 28, 33

Statutes

15 U.S.C. § 1051 et seq. ............................................................................................................................ 9
15 U.S.C. § 1057(b) ................................................................................................................................. 13
15 U.S.C. § 1114(1) ................................................................................................................................. 12
15 U.S.C. § 1117 ................................................................................................................................. 3, 22
15 U.S.C. § 1125 ............................................................................................................................... 16, 17
28 U.S.C. § 1331 ....................................................................................................................................... 9
28 U.S.C. § 1391 ....................................................................................................................................... 9
28 U.S.C. §§ 1338(a)-(b) .......................................................................................................................... 9
735 ILCS 5/2-209(a)(2) .......................................................................................................................... 10
Fed. R. Civ. P. 4 ...................................................................................................................... 24, 26, 27, 29
Fed. R. Civ. P. 26(b)(2) ........................................................................................................................... 23
Fed. R. Civ. P. 65 ............................................................................................................................. *passim*

Other Authorities

*4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970) ... 17
J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013) ... 22
Consolidated Appropriations Act, 2021 ................................................................................................. 16
The Hague Convention, Article 1 ...................................................................................................... 27, 28

<u>**MEMORANDUM OF LAW**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Wham-O brings this action against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II). As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling potentially harmful and dangerous counterfeit products in connection with Wham-O's federally registered trademarks (collectively, the "Counterfeit FRISBEE Products"), through various online marketplace accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores with an intent to have them appear to be selling genuine products, while actually selling unauthorized and unlicensed Counterfeit FRISBEE Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Wham-O has filed this action to combat Defendants' infringement and counterfeiting of Wham-O's registered FRISBEE trademarks, as well as to protect unknowing consumers from purchasing Counterfeit FRISBEE Products over the internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to

sell Counterfeit FRISBEE Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products being sold in connection with Wham-O's FRISBEE Trademarks. Defendants directly target their unlawful business activities toward consumers in Illinois, cause harm to Wham-O's business within this judicial district, and have caused and will continue to cause irreparable injury to Wham-O. Defendants deceive the public by trading upon Wham-O's reputation and goodwill and by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit FRISBEE Products in connection with Wham-O's FRISBEE Trademarks.

Defendants' ongoing unlawful activities should be restrained, and Wham-O respectfully requests that this Court issue an *ex parte* a Temporary Restraining Order. Specifically, Wham-O seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit FRISBEE Products; (2) temporarily restraining Defendants' assets to preserve Wham-O's right to an equitable accounting. Ancillary to and as part of the TRO, Wham-O respectfully requests that this Court (3) authorize expedited discovery allowing Wham-O to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit FRISBEE Products and Defendants' financial accounts; and (4) authorize service by electronic mail and/or electronic publication.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademarks infringement, courts regularly issue such orders. *See, e.g., Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-04980 (N.D. Ill. Sept. 21,

2022) and *Toho Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00011 (N.D. Ill. Jan. 4, 2022) (granting Temporary Restraining Order); *see also, In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Wham-O's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Wham-O can demonstrate a strong likelihood of success on the merits. Wham-O is the owner of the FRISBEE trademark registrations, and Defendants' use of Wham-O's FRISBEE Trademarks to sell Counterfeit FRISBEE Products is causing consumer confusion.

In addition, Defendants have and continue to irreparably harm Wham-O through diminished goodwill and damage to Wham-O's reputation. Monetary damages are inadequate to Wham-O for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing potentially harmful and dangerous Counterfeit FRISBEE Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as online marketplaces and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Wham-O seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by email and/or electronic publication is proper since as a result of

3

Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.   STATEMENT OF FACTS

### A.   Wham-O Trademarks and Products

WHAM-O, a classic outdoor toys and equipment brand, is and has been in the business of developing, marketing, selling and distributing the FRISBEE brand of flying discs for over sixty years. Wham-O's brand, symbolized by the FRISBEE Trademarks, is a recognized symbol of high-quality products. *See* Declaration of Todd Richards (the "Richards Declaration") at ¶¶ 3-5. Long before Defendants' acts described herein, Wham-O launched the FRISBEE brand products. Wham-O is the owner of trademark registrations for the FRISBEE Trademarks (the "FRISBEE Trademarks"). *Id.* at ¶ 4. The U.S. registrations for the FRISBEE Trademarks are valid, subsisting, and in full force and effect. *Id.* True and correct copies of the federal trademark registration certificates for the FRISBEE Trademarks are attached to the Richards Declaration as <u>Exhibit 1</u>. *Id.* The FRISBEE Trademarks are distinctive and identify the merchandise as goods from Wham-O. *Id.* at ¶ 5. The registrations for the FRISBEE Trademarks constitute *prima facie* evidence of their validity and of Wham-O's exclusive right to use the FRISBEE Trademarks which have been continuously used and never abandoned. *Id.* at ¶ 10. Wham-O has expended time, money, and other resources in developing, advertising, and otherwise promoting the FRISBEE Trademarks. *Id.* at ¶ 11. As a result, products bearing the FRISBEE Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Wham-O. *Id.*

### B.   Defendants' Unlawful Activities

The success of the FRISBEE brand has resulted in its significant counterfeiting. *Id. at* ¶ 13. Wham-O has identified numerous marketplace listings on various platforms, including the

Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit FRISBEE Products to consumers in this judicial district and throughout the United States. *Id.* Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and the value of counterfeit and pirated goods will reach at least $1.90 trillion in 2022. Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 3. Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments with the majority of seizures originating from Asia. *Id.* at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government exceeds $3.3 billion. *Id*. Internet websites like the Defendant Internet Stores are also estimated to contribute to millions of lost jobs for legitimate businesses. *Id.* at ¶ 3.

The Counterfeit FRISBEE Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit FRISBEE Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. Richards Declaration at ¶ 18.

### i. Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FRISBEE Products. *Id.* at ¶ 15. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal. *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live

24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Wham-O has not licensed or authorized Defendants to use its FRISBEE Trademarks, and none of the Defendants are authorized retailers of genuine FRISBEE Products. *Id.*

ii. <u>Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines</u>

Upon information and belief, Defendants also deceive unknowing consumers by using the FRISBEE Trademarks without authorization within the content, text, and/or meta tags of their webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FRISBEE Products. *Id.* at ¶ 16. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FRISBEE Products. *Id.* Further, Defendants utilize similar illegitimate SEO tactics to propel new online stores to the top of search results after others are shut down. *Id.* As such, Wham-O also seeks to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit FRISBEE Products.

iii. <u>Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down</u>

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *Id.* at ¶ 17. Other Defendant Internet Stores conceal the owners' identity and contact information. *Id.* Upon information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown

fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* at ¶ 18. For example, many of the Defendant stores have virtually identical layouts, even though different aliases were used to register the respective Defendant Internet Stores. *Id.* In addition, Counterfeit FRISBEE Products for sale in the Defendant Internet Stores bear similar indicia of being counterfeit to one another, suggesting that the Counterfeit FRISBEE Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same store name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 19. *See also,* Vogt Declaration at ¶ 4. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id. See also,* Richards Declaration at ¶ 19.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts, such as and not limited to, PayPal or similar accounts behind layers of payment gateways so that they can continue operation despite Plaintiffs' enforcement efforts. Richards Declaration at ¶ 20. Upon information and belief, Defendants maintain off-shore bank accounts and regularly

move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id. See also,* Vogt Declaration at ¶ 6. Indeed, analysis of transaction logs from similar cases brought by other trademark owners indicates that off-shore counterfeiters regularly move funds from their U.S.-based accounts to China-based bank accounts outside the jurisdiction of this Court. *Id.* at ¶ 8.

Wham-O's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit FRISBEE Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the FRISBEE Trademarks in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Wham-O to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Wham-O will take appropriate steps to amend the Complaint.

## III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Wham-O's reputation and the goodwill symbolized by the FRISBEE Trademarks. To stop Defendants' sale of Counterfeit FRISBEE Products, Wham-O respectfully requests that this Court issue a temporary restraining order. Without the relief requested by Wham-O's instant Motion, Defendants' unlawful activity will continue unabated, and Wham-O and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the FRISBEE Trademarks via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiffs by deceiving consumers into believing that the Counterfeit FRISBEE Products for sale on Defendants' Internet Stores are sponsored or endorsed by Wham-O. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the FRISBEE Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other webstores in their control, and move any assets from U.S.-based accounts, including PayPal or similar accounts to off-shore accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Wham-O respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**A. This Court May Exercise Personal Jurisdiction over Defendants**

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this Judicial District as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the FRISBEE Trademarks. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit FRISBEE Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2-3, 12, and 18. Without the benefit of an evidentiary hearing, Wham-O bears only the burden of making a prima facie case for personal jurisdiction; all of Wham-O's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a Plaintiffs have met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademark(s) without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). Recently the Seventh Circuit concluded that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers, such as Amazon.com. *NBA Properties, Inc. v. HANWJH,* No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022)

10

("[Defendant's] actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address."); *See, e.g., Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020)*; Tommy Hilfiger Licensing LLC et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A",* 1:20-cv-07477 (N.D. Ill. Mar. 24, 2021) (Docket Entry No. 46)*; Christian Dior Couture, S.A. v. Liu,* 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015)*; Monster Energy Co. v. Chen Wensheng,* 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015).

Through at least the fully interactive commercial internet websites operating under the Defendant Internet Stores, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Counterfeit FRISBEE Products to residents of the United States, including Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, \*1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the Plaintiffs will succeed on the merits, the less the balance of harms need favor the Plaintiffs' position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C.  Wham-O Will Likely Succeed on the Merits

#### i.  <u>Wham-O Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a Plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendants' use of the trademark causes a likelihood of

12

confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Wham-O satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Wham-O's FRISBEE Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The FRISBEE Trademarks have been continuously used. Richards Declaration at ¶¶ 4-11. The registrations for the FRISBEE Trademarks are valid, subsisting, and in full force and effect. *Id*. at ¶ 4. The registrations for the FRISBEE Trademarks constitute *prima facie* evidence of their validity and of Wham-O's exclusive right to use the FRISBEE Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Wham-O has not licensed or authorized Defendants to use any of the FRISBEE Trademarks, and none of the Defendants are authorized retailers of genuine FRISBEE Products. *Id.* at ¶ 15.

Wham-O satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Wham-O plainly satisfies the likelihood of confusion test. The Defendants are selling Counterfeit FRISBEE Products using a counterfeit mark identical to the FRISBEE Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Wham-O.

Plaintiffs also satisfy the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Wham-O and Defendants show the same products using the FRISBEE Trademarks to the same consumers. See Exhibit 2 to the Richards Declaration. Thus, because Defendants target the same consumers as Wham-O, this factor also weighs in favor of Wham-O.

14

Regarding the fourth factor, degree of consumer care, potential consumers purchasing FRISBEE Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, FRISBEE brand consumers are very likely to be confused, so this factor favors Wham-O.

Due to their long-standing use and wide acceptance by the public, the FRISBEE Trademarks have become associated with high quality FRISBEE Products. The FRISBEE Trademarks are distinctive when applied to the FRISBEE Products. The marks signify to consumers that the products come from Wham-O and are manufactured to quality standards. Thus, the fifth factor, the strength of the mark, also weighs heavily in favor of Wham-O.

As for the sixth factor, Wham-O does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "Plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling Counterfeit FRISBEE Products in connection with the FRISBEE Trademarks. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine FRISBEE Products or are sponsored or endorsed by Plaintiffs. This factor weighs in favor of Wham-O.

Regarding the seventh and final factor, Defendants are intentionally using the FRISBEE Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit FRISBEE Products are manufactured by or emanate from Wham-O. Defendants are purposefully attempting to benefit and trade off Wham-O's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Wham-O's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Wham-O, and, therefore, Wham-O has proved that it has a reasonable likelihood of success on the merits for their trademark infringement and counterfeiting claim.

ii.  Wham-O is Likely to Succeed on its False Designation of Origin Claim

Plaintiffs bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the Plaintiffs have a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of Plaintiffs' products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the FRISBEE Trademarks are registered marks, and Wham-O has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (*supra*), a likelihood of success on the merits for Wham-O's false designation of origin claim is also established.

**D.  There Is No Adequate Remedy at Law and Wham-O Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

On December 27, 2020, Congress passed the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260). The Act, *inter*

*alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order***.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021). Also, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

17

Defendants' unauthorized use of the FRISBEE Trademarks has and continues to irreparably harm Wham-O through diminished goodwill and brand confidence, damage to Wham-O's reputation, loss of exclusivity, and loss of future sales. Richards Declaration at ¶¶ 21-26.

The extent of the harm to Wham-O reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to Plaintiffs' goodwill was irreparable harm for which Plaintiffs had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Wham-O will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Richards Declaration at ¶ 26. As such, Wham-O should be granted preliminary relief.

### E.      The Balancing of Harms Tips in Wham-O's Favor

As noted above, if the Court is satisfied that Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiffs will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at

his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiffs' trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Wham-O has demonstrated, Defendants have been profiting from the sale of Counterfeit FRISBEE Products. Thus, the balance of equities tips decisively in Wham-O's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

F.      **Issuance of the Injunction Is in the Public Interest**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Wham-O's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Wham-O seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademark and service mark used in connection with those goods and services. Unless Defendants' unauthorized use of the FRISBEE Trademarks is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Wham-O's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Wham-O's Marks Is Appropriate

Wham-O requests a temporary injunction requiring the Defendants to immediately cease all use of the FRISBEE Trademarks or a substantially similar mark on or in connection with all of

20

the Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the FRISBEE Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the FRISBEE Trademarks.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Wham-O is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit FRISBEE Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademark(s) and counterfeiting. *See, e.g., Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-04980 (N.D. Ill. Sept. 21, 2022) and *Toho Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00011 (N.D. Ill. Jan. 4, 2022).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Wham-O requests an *ex parte* restraint of Defendants' assets so that Wham-O's right to an equitable accounting of Defendants' profits from sales of Counterfeit FRISBEE Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Wham-O meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when Wham-O's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir.

21

1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Wham-O has shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Wham-O is entitled, "subject to the principles of equity, to recover ... defendant's profits." Wham-O's Complaint seeks, among other relief, that Defendants account for and pay to Wham-O all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Wham-O's request for a prejudgment asset freeze to preserve the relief sought by Wham-O.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the Plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013).

In addition, courts in this district and across the country regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-04980 (N.D. Ill. Sept. 21, 2022) and *Toho Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00011 (N.D. Ill. Jan. 4, 2022).

Wham-O has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C.     Wham-O is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Wham-O would not know the entities upon whom to serve the order.

Wham-O respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Wham-O's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Wham-O's counsel is aware that the same third parties, in previous lawsuits, have worked with trademark owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Wham-O's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Wham-O respectfully requests that expedited discovery be granted.

**D.      Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Wham-O requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Richards Declaration and any e-mail addresses provided for Defendants by third parties that includes a link to said website. Wham-O submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from online marketplace and payment processors, is reasonably calculated under all

circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendants online marketplace accounts in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant online marketplace accounts may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Wham-O will almost certainly be left without the ability to pursue a final judgment.

Despite providing false physical addresses, the registrants of the Defendant Internet Stores must generally provide an accurate e-mail address so that their marketplaces may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal, or similar accounts, must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of the Defendant Internet Stores, who operate entirely online, to visit their internet store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *See, e.g., Wham-O Holding, Ltd. and InterSport Corp. d/b/a WHAM-O v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-04980 (N.D. Ill. Sept. 21, 2022) and *Toho Co., Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 22-cv-00011 (N.D. Ill. Jan. 4, 2022); *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Wham-O submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly

given the decision by the registrants of the Defendant Internet Stores to conduct their internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Wham-O to serve the defendants via electronic publication and/or e-mail. *See Monco v. Zoltek Corp.*, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018); *Strabala v. Zhang*, 318 F.R.D. 81, 115 (N.D. Ill. 2016); *see also Hangzhou Chic Intelligent Technology Co.; and Unicorn Global, Inc., v. The Partnerships and Unincorporated Associations Identified on Schedule A,* 20-cv-04806 (N.D. Ill. April 1, 2021) (finding Hague Convention service is optional under Federal Rule of Civil Procedure 4).

Additionally, Wham-O is unable to determine the exact physical whereabouts or identities of the registrants of the Defendant online marketplace accounts due to their provision of false and incomplete street addresses. Wham-O, however, has good cause to suspect the registrants of the respective Defendant online marketplace accounts are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). Vogt Declaration at ¶ 10. The Hague Convention does not preclude service by

email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*. at ¶ 11. As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("Plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Vogt Declaration at ¶¶ 10-12. The proposed Temporary Restraining Order provides for issuance of single original summons[1] in the name of "akhkwer and all other Defendants identified in the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). As such, Wham-O

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Wham-O's evidence of counterfeiting, infringement, and unfair competition, Wham-O respectfully requests that this Court require WHAM-O to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## VI.    CONCLUSION

Wham-O's business, its FRISBEE brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit FRISBEE Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Wham-O. Therefore, entry of an *ex parte* order is necessary to protect Wham-O's trademark rights, to prevent further harm to Wham-O and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Wham-O respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Wham-O intends to present a motion for preliminary injunction.

DATED:  December 5, 2022          Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

***ATTORNEY FOR PLAINTIFFS***