# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WHAM-O HOLDING, LTD. and
INTERSPORT CORP. d/b/a WHAM-O,

        Plaintiffs,

    v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

        Defendants.

Case No.:  1:22-cv-06802

Judge Franklin U. Valderrama

Magistrate Judge Sunil R. Harjani

## DECLARATION OF TODD RICHARDS

I, Todd Richards, declare and state as follows:

1.      This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.      I am the President of InterSport Corp. d/b/a WHAM-O and am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of WHAM-O including, but not limited to, its trademarks, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated. Plaintiff, InterSport Corp. d/b/a WHAM-O acts as the Sales, Marketing, Design and Distribution arm of Wham-O products for the Americas and has a place of business at 966 Sandhill Avenue, Carson, California 90746 and Plaintiff, Wham-O Holding, Ltd. is a foreign company organized and existing under the laws of Hong Kong.

1

3. WHAM-O, a classic outdoor toys and equipment brand, is and has been in the business of developing, marketing, selling and distributing the FRISBEE brand of flying discs for over sixty years. WHAM-O or its predecessors have exclusively used these FRISBEE trademarks, and toys solder under the FRISBEE trademarks are among the most popular ever sold, with sales in hundreds of millions of units.

4. Wham-O has long engaged in the business of manufacturing and marketing in interstate commerce toys called "flying discs" sold under the FRISBEE trademarks. FRISBEE is a federally registered trademark of WHAM-O, U.S. Trademark Registration Nos. 4,046,202; 970,089 and 679,186 (the "FRISBEE Trademarks"). The Registrations are valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificates for the trademarks are attached hereto as Exhibit 1.

5. The FRISBEE Trademarks are distinctive and identify the merchandise as goods from WHAM-O.

6. Since the introduction to the public of the FRISBEE flying disc in 1957, WHAM-O has continuously used the FRISBEE Trademarks, which have long served to identify and distinguish WHAM-O's flying discs from those of others. WHAM-O has sold over 100 million flying discs under the FRISBEE Trademarks, and WHAM-O has continuously promoted the mark on its packaging, creating a direct consumer association between the FRISBEE Trademarks and WHAM-O as the source of products.

7.　WHAM-O is the official source of FRISBEE products:



[https://wham-o.com/](https://wham-o.com/)

8.　WHAM-O is the owner of the trademark registrations for the FRISBEE Trademarks, which are covered by U.S. Trademark Registration Nos. 4,046,202; 970,089 and 679,186.

9.　The FRISBEE Trademarks are distinctive and identify the merchandise as goods from WHAM-O.

10.　The FRISBEE Trademarks have been continuously used and never abandoned.

11.　WHAM-O has expended time, money, and other resources in developing, advertising, and otherwise promoting the FRISBEE Trademarks. As a result, products bearing the FRISBEE Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from WHAM-O.

12.　In addition to continuous use of the FRISBEE Trademarks, Wham-O actively protects its trademarks from improper use. Wham-O asserts and enforces its rights against third-

parties.

13. The success of the FRISBEE brand has resulted in its significant counterfeiting. Consequently, WHAM-O is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. WHAM-O has identified numerous online store names linked to fully interactive websites and marketplace listings on platforms such as the fully interactive commercial Internet stores operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of WHAM-O's federally registered FRISBEE Trademarks (the "Counterfeit FRISBEE Products") to consumers in this Judicial District and throughout the United States.

14. I perform, supervise, and/or direct investigations related to Internet-based infringement of the FRISBEE Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit FRISBEE Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit FRISBEE Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit FRISBEE Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with WHAM-O and do not have the right or authority to use the FRISBEE Trademarks for any reason. True and correct

copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as Exhibit 2.

15. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine FRISBEE Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via, and not limited to, credit cards, Western Union, Amazon and PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. WHAM-O has not licensed or authorized Defendants to use its FRISBEE Trademarks, and none of the Defendants are authorized retailers of genuine FRISBEE Products.

16. Upon information and belief, Defendants also deceive unknowing consumers by using the FRISBEE Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FRISBEE products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FRISBEE products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online store names to the top of search results after others are shut down.

17. Defendants often go to great lengths to conceal their identities by using multiple

fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant websites often use privacy services or platforms that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective Defendant Internet Stores. In addition, Counterfeit FRISBEE products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit FRISBEE products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same store name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

19. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will

often register new websites or online marketplace accounts under new aliases once they receive notice of a lawsuit.

20. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as, and not limited to, Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of WHAM-O's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

21. Monetary damages alone cannot adequately compensate WHAM-O for ongoing infringement because monetary damages fail to address the loss of control of and damage to WHAM-O's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to WHAM-O's reputation and goodwill by acts of infringement

22. WHAM-O's goodwill and reputation are irreparably damaged when the FRISBEE Trademarks are used on goods not authorized, produced, or manufactured by WHAM-O. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to WHAM-O's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

23. WHAM-O is further irreparably harmed by the unauthorized use of the FRISBEE Trademarks because counterfeiters take away WHAM-O's ability to control the nature and quality of products bearing the FRISBEE Trademarks. Loss of quality control over goods bearing the FRISBEE Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

24. The sale of Counterfeit FRISBEE products bearing the FRISBEE Trademarks also causes consumer confusion, which weakens WHAM-O's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit FRISBEE products they have purchased originated from WHAM-O will come to believe that WHAM-O offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine FRISBEE products, resulting in a loss or undermining of WHAM-O's reputation and goodwill.

25. WHAM-O is further irreparably damaged due to a loss in exclusivity. The FRISBEE products are meant to be exclusive. WHAM-O's extensive marketing and distribution of FRISBEE products as part of its event sponsorship and other marketing activities are aimed at growing and sustaining sales of FRISBEE products. The FRISBEE Trademarks are distinctive and signify to consumers that the products originate from WHAM-O and are manufactured to WHAM-O's high-quality standards. When counterfeiters use the FRISBEE Trademarks on goods without WHAM-O's authorization, the exclusivity of WHAM-O's products, as well as WHAM-O's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

26. WHAM-O will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2022.

*Todd Richards*
Todd Richards

8